UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>**SOLAR WOLF ENERGY, INC.,**<br><br>Debtor. | Chapter 7<br>Case No. 22-40693-CJP |

**MOTION BY CHAPTER 7 TRUSTEE FOR AUTHORITY
TO CONDUCT EXAMINATIONS AND TO COMPEL PRODUCTION OF
DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004**

(**PROPOSED EXAMINEES**: (1) Ted Strzelecki; (2) Taylor Bennett; (3) Citizens Bank, National Association; (4) Centreville Bank; (5) Avidia Bank; (6) TD Ameritrade)

To the Honorable Christopher J. Panos, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee ("Trustee") appointed in the above-captioned case of Solar Wolf Energy, Inc. ("Debtor"), by and through his undersigned counsel, and hereby respectfully requests (the "Motion") entry of an Order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), authorizing the Trustee to conduct examinations of, and to compel the production of documents from, the persons and entities identified on **Exhibit A** attached hereto (the "Proposed Examinees"). **The Proposed Examinees are: (1) Ted Strzelecki; (2) Taylor Bennett; (3) Citizens Bank, National Association; (4) Centreville Bank; (5) Avidia Bank; and (6) TD Ameritrade.** The proposed examinations and document requests are narrowly tailored to obtain critical information necessary to permit the Trustee to further his investigation into the Debtor's assets and prepetition financial affairs including, without limitation, deposit and investment accounts in which the Debtor had an interest and/or to which the Debtor made substantial transfers prior to filing this case.

In support of this Motion the Trustee states as follows:

1

{Client Matter 15008/14399/A8136875.DOCX}

## RELEVANT FACTUAL BACKGROUND

A. **Bankruptcy Case Background and Proposed Examinees.**

1. On September 23, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2. On September 26, 2022, the United States Trustee appointed the Trustee Chapter 7 trustee of the Debtor's case, and he continues to serve as such.

3. Ted Strzelecki is identified in the Debtor's schedules as the President, Treasurer and Secretary, and 90% owner, of the Debtor.

4. Taylor Bennett (believed to be Mr. Strzelecki's sister-in-law) is identified in the Debtor's schedules as the Vice President, and 10% owner, of the Debtor.

5. The Debtor maintained or (with respect to TD Ameritrade) appears to have maintained accounts at Citizens Bank, National Association, Centreville Bank, Avidia Bank and TD Ameritrade. As set forth in greater detail below, the Trustee has not yet confirmed in whose name the TD Ameritrade account sits, but the Trustee <u>has</u> confirmed that the Debtor transferred substantial sums to such account in the relevant period prior to the Petition Date.

B. **Debtor's Business Operations and Cessation of Business.**

6. Since in or about 2015 the Debtor was engaged in the solar power sales, installation and servicing business generally through three avenues: (a) the Debtor created contracts and installed equipment for customers that would become customers of a larger entity (for example, SunPower or Solar Energy) after installation of those customers' projects; (b) the Debtor would purchase panels and related equipment from a third party such as SunPower for customers of the Debtor, where the customers' contractual relationship would remain with the

Debtor; and (c) the Debtor would act as a subcontractor for third parties (such as SunPower or Solar Energy), where the Debtor would install panels and related equipment for customers of the third party.

7.   By winter of 2021 – 2022, and likely much earlier, the Debtor had fallen behind on both paying its bills and in its project installations. By March or April 2022, the Debtor had roughly $1 million in federal tax liens, and its owners, Mr. Strzelecki and Ms. Bennett, also were subject to one or more personal tax liens. The Debtor was also being hit with lawsuits and judgments from suppliers and other creditors.

8.   In April 2022, one of the Debtor's major suppliers and providers of contract work, SunPower, terminated its relationship with the Debtor.

9.   The Debtor ceased operations in or about May 2022. It appears that in the months leading up to the time that it ceased doing business, the Debtor continued to accept deposits from customers. According to its Statement of Financial Affairs ("SOFA"), as amended, in the first four to five months of 2022 the Debtor had gross revenue from sales of $681,024.00.

**C.    Debtor's Various Accounts and Statements in Original Schedules and SOFA.**

10.   In its original Schedule A/B (Docket No. 22), in response to question 3.1 of Part 1, the Debtor indicated that as of the Petition Date its sole "checking, savings, money market or financial brokerage account" was a checking account at Centreville Bank (account ending #3197) with a balance of $0.00.

11.   In its original SOFA (Docket No. 23), in response to question 18, the Debtor indicated that within the year prior to the Petition Date it closed not only that Centreville Bank account (#3197), but also three accounts at Avidia Bank (#7757, #3989, and #6919) and two

accounts at Citizens Bank (#6768 and #6662). The Debtor failed to indicate the dates that the accounts were closed and stated "unknown" as the last balance before the accounts were closed.

12. In response to SOFA question 4, the Debtor stated that it had made no payments or transfers that benefitted any insider during the year prior to the Petition Date. In response to SOFA question 30, the Debtor stated that the only payments, distributions, withdrawals or other value provided to any insider ("in any form, including salary, other compensation, draws, business loans, credits on loans, stock redemptions, and options exercised") within a year prior to the Petition Date were "employee compensation" to Mr. Strzelecki "estimated at less than $40,000" and "wages" to Ms. Bennett of $49,583.00.

13. In response to SOFA question 5, the Debtor stated that no property of the Debtor was obtained by a creditor within the year prior to the Petition Date, including without limitation property repossessed or foreclosed upon.

**D.**     **Mr. Strzelecki's Testimony at Initial Creditors' Meeting.**

14. The Trustee conducted a lengthy (over three hours) initial meeting of creditors on October 26, 2022 (the "Initial Meeting"). The Trustee had his office prepare an informal transcript of the Initial Meeting. The Trustee filed a copy of the transcript (Docket No. 70) on November 14, 2022 and circulated the transcript to creditors who attended the meeting or otherwise contacted the Trustee. Before filing the transcript, the Trustee sent it to both Debtor's counsel and to Mr. Strzelecki and solicited corrections; none were conveyed.

15. At the Initial Meeting, after being sworn in, Mr. Strzelecki confirmed that he had completed and executed the Schedules and SOFA and that to the best of his knowledge, the information in the Schedules and SOFA is truthful and accurate.

16.   Prior to and during the Initial Meeting, the Trustee requested that the Debtor provide copies of monthly account statements, with check images, for all accounts from January 1, 2021 through the earlier of account closure or the Petition Date. The Debtor and counsel agreed to amend the SOFA to, among other things, indicate dates of closure of the various accounts and list in the Schedules certain possible claims against third parties that Mr. Strzelecki referenced during the Initial Meeting. At no time during the Initial Meeting did Mr. Strzelecki or Debtor's counsel indicate that the Debtor had had other accounts, transfers or creditor repossessions or seizures during relevant periods. The Trustee continued the creditors' meeting to December 7, 2022.

17.   Following the Initial Meeting, in early November 2022, the Trustee took possession of the books, records and computer hard drives located at the Debtor's premises in Auburn, Massachusetts. The Trustee also, repeatedly, requested that Mr. Strzelecki and Debtor's counsel provide login information for the Debtor's QuickBooks account and login information for the 18 or so computer hard drives, one laptop and one tablet of which the Trustee had taken possession. Despite many requests and many promises to provide such information, no access information has been provided to the Trustee to date.

18.   In advance of the December 7, 2022 continued creditors' meeting (the "Continued Meeting"), the Debtor provided some but not all of the requested monthly statements, but no check images. When reviewing the statements provided, the Trustee noted that within the year prior to the Petition Date, substantial sums were transferred to an account ending #6048 (institution unknown, possibly Citizens) and also to an account at TD Ameritrade. Neither account has appeared anywhere in the Debtor's Original Schedules and SOFA, nor did Mr. Strzelecki or Debtor's counsel disclose such accounts at the Initial Meeting. The Trustee also

noted a sizeable number of unexplained cash withdrawals and wire transfers within the year prior to the Petition Date. Further, the Trustee noted that while many monthly statements were provided for the Debtor's primary operating account at Centreville Bank, the statement for the month of April 2022 was not provided, even though statements before and after that month were provided. During the "missing" month, the account balance began at approximately $64,000 but ended at approximately $2,000. Despite the Trustee's many requests, the Debtor and Debtor's counsel have still failed to provide the "missing" statement, or explain why it has not been provided, or explain the disposition of more than $60,000 just prior to shutting down.

19. On December 4, 2022, the Debtor filed its amended Schedules and SOFA (Docket No. 121). In the amended Schedules A/B, the Debtor now listed three possible causes of action with "unknown" values (question 74). In the amended SOFA, the Debtor listed: (a) the return of solar panels and related materials with an approximate value of $53,000 to SunPower (question 5); (b) identified the plaintiffs in the suits against the Debtor (question 7); and (c) added the dates of closure for the closed accounts (July 2022; question 18).

20. Notably, the amended Schedules and SOFA did not add any accounts, transfers for benefit of insiders, or seizures or other similar action by any creditor against property of the Debtor.

21. At the approximately two-hour Continued Meeting on December 7, 2022, the Trustee confronted Mr. Strzelecki about the TD Ameritrade account. Mr. Strzelecki, again under oath, came up with different descriptions and purposes of the account, at first suggesting the account was for the Debtor's benefit, to increase the return on Debtor funds not needing to be immediately used; then stating that the account was a "retirement" account, presumably for the benefit of him and/or other insiders. Mr. Strzelecki stated that he had not disclosed the account

because the IRS had seized all the funds in the account in July or August 2022, and that he failed to disclose that "seizure", just a few months before the Petition Date, because he thought that IRS and DOR matters were "separate" from the bankruptcy case. Mr. Strzelecki agreed to provide the Trustee with statements for the account.

22. The Trustee filed a copy of the informal transcript for the Continued Meeting on December 27, 2022 (Docket No. 151).

23. During and after the Continued Meeting, the Trustee repeatedly requested that the Mr. Strzelecki and Debtor's counsel provide copies of the "missing" Centreville Bank statement; information and statements for the "missing" account ending #6048; and information and account statements for the TD Ameritrade account. The Trustee also reminded Debtor's counsel of his obligation to again amend the Debtor's Schedules and SOFA, to reflect, for example, the previously undisclosed accounts, apparent transfers for insider benefit within a year prior to the Petition Date, and apparent seizure of the TD Ameritrade account well within a year prior to the Petition Date.

24. Notably, Mr. Strzelecki's testimony about the disposition of the funds in the TD Ameritrade account appears to have been...inaccurate as, according to the IRS, the TD Ameritrade account had been zeroed out prior to the seizure by the IRS.

25. To date, Mr. Strzelecki and Debtor's counsel have failed to provide the Trustee with the requested information and statements and have failed to file required amendments to the Schedules and SOFA.

## RELIEF REQUESTED

26. The Trustee seeks authority to conduct Rule 2004 examinations of, and to compel the production of documents from, the persons and entities identified on **Exhibit A** attached

hereto (i.e., the Proposed Examinees). Specifically, Trustee seeks to conduct examinations of and to obtain documents from the Proposed Examinees concerning, without limitation, accounts, transfers, transactions, creditor seizures and related matters including disposition of funds in the TD Ameritrade account and any other accounts and other assets in which the Debtor may have had an interest.

27. Upon information and belief, the Proposed Examinees have knowledge of and information regarding such matters. The documents that the Trustee seeks to compel from the Proposed Examinees are described in **Exhibit B** attached hereto.

## BASIS FOR RELIEF REQUESTED

28. Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Rule 2004(b) provides that "[t]he examination of an entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(b). Further, pursuant to Rule 2004(c), the movant may subpoena documents from an entity compelled to appear for examination in the manner provided in Rule 9016. Fed. R. Bankr. P. 2004(c).

29. "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets [and] examining transactions . . . ." In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). As such, Rule 2004 is "the basic discovery device used in bankruptcy cases, permitting the examination of any party without the requirement of a pending adversary proceeding or contested matter." In re J. Fife Symington, III, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (internal quotations omitted). In

addition, Rule 2004 examinations are "unfettered and broad" in scope. In re GHR Energy Corp., 33 B.R. 451, 453 (Bankr. D. Mass. 1983).

30. The Trustee asserts that the proposed examinations and related document requests fall well within the scope of Rule 2004(a) as they pertain to a "matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(b). Specifically, the examinations and related document requests are in furtherance of the Trustee's duty to investigate the financial affairs of the Debtor and to collect and reduce to money property in which the Debtor has or may have had an interest. Bankruptcy Code §704(a).

31. Prior to filing this Motion, the Trustee has repeatedly contacted the Debtor's counsel and Mr. Strzelecki to try to obtain the information sought consensually. The cooperation received to date has been sporadic and incomplete.

32. For the foregoing reasons, the Trustee asserts that the relief requested in this Motion is necessary and appropriate.

33. Trustee reserves all rights to seek further relief pursuant to Rule 2004 related to this matter, including, without limitation, to file subsequent motions seeking authority to conduct a Rule 2004 examination of any other party.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

    a. Authorizing the Trustee pursuant to Rule 2004 to conduct examinations of the persons and entities listed on **Exhibit A** attached hereto (i.e., the Proposed Examinees), at a time and place to be designated by Trustee, on not less than 10 days written notice;

    b. Requiring that the Proposed Examinees produce to the Trustee, at a time and place to be determined prior to any examination, all of the documents in their possession, custody, or control described in **Exhibit B** attached hereto;

    c. Authorizing the issuance of subpoenas to the Proposed Examinees pursuant to Fed. R. Bankr. P. 2004(c) and 9016; and

      d.    Granting the Trustee such other and further relief as the Court deems just and proper.

Respectfully submitted,

**JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE**

By his counsel,

/s/ Joseph H. Baldiga
Joseph H. Baldiga, BBO #549963
Kate P. Foley, BBO #682548
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: 508.898.1501
Fax:    508.898.1502
Email:  jbaldiga@mirickoconnell.com
Email:  kfoley@mirickoconnell.com

Dated: January 3, 2023

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| In re: | |
|---|---|
| SOLAR WOLF ENERGY, INC., | Chapter 7<br>Case No. 22-40693-CJP |
| Debtor. | |

## ORDER ALLOWING MOTION BY CHAPTER 7 TRUSTEE FOR AUTHORITY TO CONDUCT EXAMINATIONS AND TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004

Upon the Motion for Authority to Conduct Examinations and to Compel Production of Documents Pursuant to Fed. R. Bankr. P. 2004 (the "Motion") dated January 3, 2023 and filed by Joseph H. Baldiga, the Chapter 7 trustee ("Trustee"), the Court finding that the Motion is in the best interest of the estate; sufficient notice of the Motion having been given; and no objection to the Motion having been filed or any such objection having been withdrawn or overruled;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The Motion is ALLOWED;

2. The Trustee is authorized to conduct examinations of the persons and entities listed on "Exhibit A" to the Motion (the "Examinees"), pursuant to Fed. R. Bankr. P. 2004, regarding the matters for examination described in the Motion, at a time and place to be designated by the Trustee, on not less than 10 days written notice, and from time to time thereafter until completed, or at any other time upon which the parties may agree;

3. The Examinees shall produce to the Trustee, at a time and place to be determined prior to any examination, all of the documents described in "Exhibit B" attached to the Motion; and

4. The Trustee is authorized to issue subpoenas pursuant to Fed. R. Bankr. P. 2004(c) and 9016 in order to effectuate the examinations and document requests authorized by this Order.

Dated: _____, 2023    _____
Honorable Christopher J. Panos
United States Bankruptcy Judge

1

{Client Matter 15008/14399/A8136875.DOCX}