**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

In re:

**SOLAR WOLF ENERGY, INC.,**

      **Debtor.**

**Chapter 7**
**Case No. 22-40693-CJP**

**MOTION TO APPROVE STIPULATION OF SETTLEMENT BETWEEN**
**JOSEPH H. BALDIGA, CHAPTER 7 TRUSTEE, AND SUNPOWER CORPORATION**

To the Honorable Christopher J. Panos, United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the

bankruptcy estate (the "Estate") of Solar Wolf Energy, Inc. (the "Debtor"), and hereby moves

(the "Motion") this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

and MLBR 9019-1 for an Order approving the Stipulation of Settlement (the "Stipulation")

entered into by and between the Trustee and SunPower Corporation acting for itself and its

affiliates ("SunPower"; together with the Trustee, the "Parties"). A copy of the Stipulation is

filed concurrently herewith.

In support of this Motion, the Trustee states as follows:

**PRELIMINARY STATEMENT**

The Stipulation is for the purpose of documenting the resolution of claims and potential

claims arising from the pre-petition business relationship between the Debtor and SunPower. As

set forth more fully below, the Stipulation reflects:

- the Trustee's investigation and assessment of the pre-petition business relationship between the Debtor and SunPower;

- a payment of $35,000 by SunPower to the Trustee for certain equipment of the Debtor transferred to SunPower pre-petition;

- a proposed SunPower program in conjunction with the Massachusetts Clean Energy Technology Center ("Mass-CEC") to assist certain residential homeowners that contracted with the Debtor for residential solar projects under the "Solarize Yarmouth Program". The assistance program would involve a contribution by SunPower and Mass-CEC described further below to give eligible homeowners an option to complete projects that were not completed when the Debtor ceased business operations; and

- mutual releases of claims the Parties have or could have otherwise asserted in these proceedings.

## BACKGROUND

**A.    The Bankruptcy Case.**

1.      Prior to September 23, 2022 (the "Petition Date"), the Debtor was engaged in the solar power sales, installation and servicing business.

2.      The Debtor ceased its business operations in or about May 2022.

3.      On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

4.      On September 26, 2022, the United States Trustee appointed Joseph H. Baldiga Chapter 7 trustee of this case, and he continues to serve as such.

**B.    The Parties' Pre-Petition Contracts.**

5.      SunPower was one of the Debtor's suppliers and transaction partners prior to the Petition Date.

6.      The Parties' business relationship was evidenced by: (a) a Dealer Participation Agreement (in which the Debtor originated contracts and installed equipment for customers that would become customers of SunPower); (b) a Residential Dealer Agreement (in which the Debtor could purchase SunPower panels and related equipment from SunPower for customers of the Debtor and customers' contractual relationship would remain with the Debtor); and (c) an

2

Installation Partner Agreement (in which the Debtor would act as a subcontractor for SunPower and install panels and related equipment for SunPower customers) (each a "Contract", collectively, the "Contracts").

7.    SunPower terminated the Dealer Participation Agreement in April 2022. SunPower did not thereafter request further services from the Debtor under the Installation Partner Agreement. The Debtor did not thereafter seek to purchase equipment under the Residential Dealer Agreement.

8.    The Debtor's Schedules and Statement of Financial Affairs in these proceedings, as amended, listed potential claims against SunPower for breach of one or more of the Contracts with a stated value of "unknown" (the "Breach Issues"). See Dkt. No. 121. SunPower disputes that any breach of contract claims exist against SunPower under any Contract.

**C.    Return of Equipment.**

9.    Prior to the Petition Date, after the Debtor ceased business operations, the Debtor and SunPower coordinated the return to SunPower of solar panels, rails, batteries and assorted related items (the "Retrieved Property") from the Debtor's premises in Auburn, Massachusetts. An inventory of the Retrieved Property is attached hereto as **Exhibit A**. Under the terms of the Dealer Participation Agreement and the Installation Partner Agreement, equipment relating to both of these contracts at the Debtor's premises was owned by SunPower and not the Debtor. The recovery of the Retrieved Property was coordinated by the Debtor and SunPower (including respective counsel) and representatives of the Debtor helped to segregate the equipment to be recovered by SunPower. A representative of the Debtor was present when the Retrieved Property was recovered.[1]

---

[1]    As part of this same process the parties reconciled accounts receivable owed by SunPower to the Debtor and SunPower remitted the accounts receivable the parties agreed were then owed to the Debtor.

3

**D.**     **The Trustee's Investigation and Diligence.**

10.     Following his appointment, the Trustee vetted and investigated the Breach Issues as well as matters affecting the Retrieved Property.

11.     SunPower disputes any assertion that SunPower committed any material breach of any of the Contracts and the Trustee concluded from his investigation that any breach of contract claims based on the Contracts are likely meritless.  The Trustee also concluded that no value to the Estate is likely even if such a claim were pursued since the Debtor's pre-petition assets are subject to sizable liens of numerous parties, including the Internal Revenue Service, the Commonwealth of Massachusetts – Department of Revenue, the U.S. Small Business Administration for an unpaid $150,000 COVID-related loan, DLR Inc. and possibly others (collectively, the "Asset Liens").  The Asset Liens would attach to any recovery stemming from breach of contract claims (if any).

12.     SunPower also disputes any wrongdoing in connection with its collection of the Retrieved Property.  The Trustee asserts that the Estate may have avoidance claims stemming from SunPower's collection of the Retrieved Property, including without limitation claims pursuant to Bankruptcy Code §§ 544, 547 and 548 (collectively, "Avoidance Claims").  As part of the Parties' review of information in responding to the Trustee's investigation of matters affecting Retrieved Property, SunPower determined and disclosed to the Trustee that approximately 19 panels apparently owned by the Debtor (with a "dealer price" of approximately $8,500) were comingled with and included in the Retrieved Property (such equipment, "SW Property").  SunPower also determined and disclosed to the Trustee that some additional amount of the Retrieved Property might also be SW Property.  The Parties have disputed the extent to which Retrieved Property included SW Property beyond the 19 panels referenced above given,

{Client Matter 15008/14399/A8235173.DOC}

among other factors, the Debtor's participation in segregating the Retrieved Property when it was

recovered, the Debtor's consent in SunPower's recovery of the Retrieved Property, and the

available records concerning equipment SunPower expected to recover. The Parties have also

disputed the fair market value of any Retrieved Property that might be SW Property (vs. the

"dealer price"), as well as the effective amounts that could have been recovered by the Estate for

any SW Property had it remained with the Debtor given holding and disposition costs the Estate

would have incurred. SunPower has asserted that given these and similar issues any exposure by

SunPower for issues regarding Retrieved Property beyond the 19 panels are de minimis.

SunPower has disclosed to the Trustee that at most, net of offsets for missing equipment, the

aggregate "dealer price" of such property, including the 19 panels, would be approximately

$60,000.

13.    In the Debtor's Statement of Financial Affairs, as amended, in response to

Question 5, the Debtor ascribed a value of $53,027.72 to the SW Property. See Dkt. No. 121.

The Trustee believes this is actually a reference to accounts receivable the Debtor previously

claimed from SunPower for installations performed by the Debtor under the Contracts (as noted

above, however, SunPower and the Debtor resolved and SunPower paid accounts receivable

owed to the Debtor before the Petition Date).

**E.    Solarize Yarmouth Program.**

14.    SunPower and the Trustee have discussed matters relating to the Debtor's pre-

petition participation in the Solarize Yarmouth Program for which Mass-CEC provided a process

framework and administrative and technical support services. The Debtor was selected by the

participating community as the installation company for the Solarize Yarmouth Program, and

contracted with residential participants in the Solarize Yarmouth Program to install residential

solar systems that were intended to include equipment supplied by SunPower (the "Customers").

15.     Prior to the Petition Date, the Debtor accepted deposits or partial payments from

certain Customers that were waiting for projects to commence or were left with incomplete

projects when the Debtor ceased operations in or about May 2022 (the "Affected Customers").

16.     Together, the Mass-CEC and SunPower are investigating the possibility of

assisting Affected Customers that desire to complete the residential solar systems that were

contracted with the Debtor under the Solarize Yarmouth Program.  Affected Customers would be

given an option to contract with SunPower to install (or complete) a residential solar system

comparable to the one promised by the Debtor (the "Yarmouth Assistance Program").  Affected

Customers that opt to participate in the Yarmouth Assistance Program would receive a full credit

for deposits or partial payments previously paid to the Debtor, and will be given an opportunity

to complete their projects by payment of the outstanding balance that would have been due under

their contract with the Debtor.  Mass-CEC and SunPower would subsidize the completion of

these projects through the provision of equipment and/or payment of installation costs that would

have otherwise been covered by such Customer's deposits or partial payments to the Debtor.

**F.     Agreement to Compromise.**

17.     The Parties have engaged in extensive diligence regarding the Contracts and the

Retrieved Property, have engaged in extensive negotiations regarding the Avoidance Claims, and

have discussed the potential Yarmouth Assistance Program, and now wish to consensually

resolve all of the disputes and claims between them as set forth herein and in the Stipulation.

{Client Matter 15008/14399/A8235173.DOC}

18.    The Stipulation is subject to Bankruptcy Court approval pursuant to Rule 9019 of

the Federal Rules of Bankruptcy Procedure and MLBR 9019-1.  Absent such approval, the

Stipulation will be of no force or effect.

## SUMMARY OF THE STIPULATION[2]

19.    The Stipulation provides that:

a.    SunPower will pay the sum of $35,000 (the "Settlement Payment") to the

Trustee as full settlement and satisfaction of the Avoidance Claims;[3]

together with the Mass-CEC, SunPower is authorized in its sole discretion

(including reasonable contract requirements with Affected Customers) to

proceed with the Yarmouth Assistance Program.  SunPower's solicitation

of Affected Customers in order to implement the program would not (i)

constitute a violation of the automatic stay set forth in Bankruptcy Code §

362 or (ii) give rise to any right or claim of the Estate against SunPower;

b.    Should the Yarmouth Assistance Program go forward, SunPower would

notify the Affected customers as follows: (i) under the terms of an

agreement with the Trustee in these proceedings to facilitate the Yarmouth

Assistance Program, Affected Customers that avail themselves of the

Yarmouth Assistance Program will relinquish any claims asserted against

the Estate, and (b) Affected Customers with questions regarding this

aspect of the Yarmouth Assistance Program may contact the Trustee;

---

[2]    This section contains a summary only.  Interested parties should review the entire Settlement Agreement filed
contemporaneously herewith.

[3]    Under the Stipulation, the Settlement Payment is due to the Trustee within fifteen (15) business days following
entry of an Order of this Court approving the Stipulation (the "Approval Order") and the Approval Order
becoming "final" (i.e., no longer subject to stay, reconsideration or appeal, the "Final Order").

c.      The Trustee and the Estate would relinquish any claim or interest in the

receivables purportedly due from any Affected Customers who chose to

participate;

d.      Effective upon the later to occur of: (i) entry of the Approval Order and

the Approval Order becoming the Final Order and (ii) the Trustee's receipt

of the Settlement Payment, the Trustee, on behalf of the Estate, will be

deemed to have waived and released SunPower of and from any and all

claims and/or counter-claims, causes of action, suits and liabilities, now,

heretofore existing at law or in equity, whether known or unknown,

including without limitation claims that were or could have been asserted

by the Trustee on behalf of the Debtor or the Estate against SunPower in

this proceedings; and

e.      Effective upon the later to occur of: (i) entry of the Approval Order and

the Approval Order becoming the Final Order and (ii) the Trustee's receipt

of the Settlement Payment, SunPower will be deemed to have waived and

released the Trustee and the Estate of and from any and all claims and/or

counter-claims, causes of action, suits and liabilities, now, heretofore

existing at law or in equity, whether known or unknown, including

without limitation claims arising out of, or related to, the subject matter of

the SW Property and the Avoidance Claims.

## REASONABLENESS OF THE SETTLEMENT AGREEMENT

20.     In determining whether a settlement agreement should be approved, a bankruptcy

court should "assess and balance the value of the claim that is being compromised against the

value to the estate of the acceptance of the compromise proposal." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995), quoting In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (additional citation omitted).  The Trustee's judgment as to the propriety of the proposed settlement is to be accorded some deference.  Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. BAP 1997).

21.    The Trustee asserts that Court approval of the Stipulation will result in a material benefit to the Estate in the amount of $35,000 (i.e., the Settlement Payment).  As a result, the Trustee believes that approval of the Stipulation is in the best interest of the Estate and its creditors.

22.    The Trustee has also determined that the Stipulation considers (a) the strengths and weaknesses of the Estate's claims against SunPower and SunPower's defenses, (b) the risks inherent in contested litigation, (c) the substantial legal costs and expenses that the Trustee would otherwise incur to prosecute the Estate's viable claims, including undertaking substantial discovery and conducting hearings on dispositive motions and/or a trial, and (d) the delay and uncertainty associated with prolonged litigation.

23.    As noted above, SunPower disputes any wrongdoing in connection with its collection of the Retrieved Property.  In addition, the Parties differ regarding the extent to which Retrieved Property included SW Property, the fair market value of any Retrieved Property that might be SW Property, and the effective amounts that could have been recovered by the Estate for any SW Property had it remained with the Debtor given holding and disposition costs the Estate would have incurred.  The Trustee considered SunPower's asserted defenses when entering into the Stipulation.

24.     As a result of all of the above considerations, the Trustee determined that immediate payment of the Settlement Payment is overall a better result than what would result from prolonged and uncertain litigation related to the Avoidance Claims.  In addition, the Trustee believes the terms of the Stipulation factor in relevant and appropriate costs and risks.

25.     Further, SunPower's proposal to proceed with the Yarmouth Assistance Program will benefit many of the Customers that were harmed by the Debtor's cessation of its business. Specifically, the program will assist certain residential homeowners that contracted with the Debtor for residential solar projects under the Solarize Yarmouth Program and will give eligible homeowners an option to complete projects that were not completed when the Debtor ceased business operations.

26.     In sum, the Trustee believes that the Stipulation is reasonable and fair and equitable.

27.     As a result of the foregoing, approval of the Stipulation is in the best interest of the Estate and its creditors.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order:

A.     Approving the Stipulation as it is in the best interest of the Estate; and

{Client Matter 15008/14399/A8235173.DOC}

B.    Granting the Trustee such other and further relief as is just.

Respectfully submitted,

**JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE**

By his counsel,

/s/ Joseph H. Baldiga

Joseph H. Baldiga, BBO #549963
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone: 508.898.1501
Fax:    508.898.1502
Email: bankrupt@mirickoconnell.com
Email: jbaldiga@mirickoconnell.com

Dated:  April 10, 2023

{Client Matter 15008/14399/A8235173.DOC}

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (CENTRAL DIVISION)

| | |
|---|---|
| In re:<br><br>**SOLAR WOLF ENERGY, INC.,**<br><br>Debtor. | **Chapter 7**<br>**Case No. 22-40693-CJP** |

## ORDER APPROVING STIPULATION OF SETTLEMENT BETWEEN
## JOSEPH H. BALDIGA, CHAPTER 7 TRUSTEE, AND SUNPOWER CORPORATION

Upon the Motion to Approve Stipulation of Settlement Between Joseph H. Baldiga,

Chapter 7 Trustee, and SunPower Corporation (the "Motion"), filed by Joseph H. Baldiga,

Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Solar Wolf Energy,

Inc., on April 10, 2023; and the Court finding that the Motion is in the best interest of the Estate;

and no objection to the Motion having been filed or any such objection having been withdrawn

or overruled;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

    A.    The Motion is ALLOWED; and

    B.    The Stipulation of Settlement Between Joseph H. Baldiga, Chapter 7
            Trustee, and SunPower Corporation is APPROVED.


Dated: _____, 2023      _____

                                       Honorable Christopher J. Panos
                                       United States Bankruptcy Judge

# <u>Exhibit A</u>

**Solar Wolf - Material Return, 7/20/22**

| SKU | Description | 1st pass | Notes | 2nd Pass |
|---|---|---|---|---|
| 506608 | ASSY, MID CLAMP, INVISIMOUNT | 837 | | 837 |
| 508012 | ASSY, GROUNDING, RAIL, INVISIMOUNT | 101 | | 101 |
| 510088 | KIT, SPLICE, SCREWS, INVISIMOUNT | 346 | | 346 |
| 511171 | RAIL, INVISIMOUNT, EXTRUSION, 3280MM | 294 | | 294 |
| 513473 | ASSY, CLIP, GROUNDING, ROW, INVISIMOUNT | 111 | | 111 |
| 514902 | LUG, LAY-IN, GROUNDING, WILEY, .266 MOUNTING HOLE, 6GA-14GA WIRE | 45 | | 45 |
| 516990 | KIT, REVENUE GRADE METERING CT, PRODUCTION, PVS OUTDOOR | 3 | | 3 |
| 518636 | ASSY, END CLAMP, INVISIMOUNT | 460 | | 460 |
| 519111 | MODULE ROW SPACER, INVISIMOUNT | 408 | | 408 |
| 526616 | PVM, SPR-X21-335-BLK-E-AC, AR-F1 M5 B2 166A | 19 | | 19 |
| 529027 | MONITORING SYSTEM, R&C, PVS6, 100-240VAC, US | 16 | | 16 |
| 530021 | PVM, SPR-X22-360-E-AC, AR-H1 M5 B1 L 166A | 20 | | 20 |
| 530095 | PVM, SPR-A400-G-AC, AR-F1 M5.2 B1 | 37 | | 37 |
| 530167 | JUNCTION BOX, RAIL MOUNTED, V2, INVISIMOUNT | 2 | | 2 |
| 530168 | JUNCTION BOX, ROOF TRANSITION, COMP SHINGLE, INVISIMOUNT | 5 | | 5 |
| 530206 | PVM, SPR-A410-G-AC, AR-F1 M5.2 B1 | 12 | | 12 |
| 531539 | CLIP, RAIL, CABLE MANAGEMENT, DG CABLE, INVISIMOUNT | 232 | | 232 |
| 531559 | JUNCTION BOX, RAIL MOUNTED, ENPHASE CABLE GLAND, ASSEMBLY, INVISIMOUNT | 3 | | 3 |
| 531766 | ROOF ATTACHMENT, RAFTER, COMP SHINGLE, PEGASUS, BLACK | 72 | | 72 |
| 531967 | CLIP, FRAME, CABLE MANAGEMENT, 0 DEGREE, ENPHASE, EQUINOX | 196 | | 196 |
| 532173 | KIT, METERING, CONSUMPTION, PVS6, UL LISTED XOBA, RED/WHT - BLK/WHT LEADS | 13 | | 13 |
| 533921 | PVM, SPR-A410-G-AC, AR-F1 M5.2 B1 | 31 | 1 Broken | 31 |
| 534278 | KIT, STANDARD METERING CT, PRODUCTION, PVS OUTDOOR | 8 | | 8 |
| 538341 | PVM, SPR-X22-360-E-AC, AR-H1 M5 B1 L 166A | 106 | | 106 |
| 538352 | PVM, SPR-M425-H-AC, AR-F1 M5.2 B2 | 87 | | 87 |
| 544319 | ROOF ATTACHMENT, OPEN SLOT, COMP SHINGLE, PEGASUS, BLACK | 282 | | 282 |
| 531575 | AC CONNECTOR, FIELD-MADE, FEMALE CONNECTOR, ENPHASE, EQUINOX | 16 | | 16 |
| 531702 | AC CONNECTOR, FIELD-MADE, MALE, ENPHASE, EQUINOX | 14 | | 14 |
| 531578 | AC TERMINATOR CAP, ENPHASE, EQUINOX | 1 | | 1 |

1st Pass        Michael Iup

2nd Pass        Joshua black